# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **INDIAN LAW RESOURCE CENTER,**<br>601 E. Street S.E.<br>Washington, DC 20003,<br>                     Plaintiff,<br>     v.<br><br>**OFFICE OF ASSISTANT SECRETARY–INDIAN AFFAIRS,**<br>MS-3071, MIB<br>1849 C Street, NW<br>Washington, DC 20240<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR BUREAU OF INDIAN AFFAIRS, PACIFIC REGIONAL OFFICE,**<br>2800 Cottage Way<br>Sacramento, CA 95825<br><br>**OFFICE OF THE SOLICITOR, DEPARTMENT OF THE INTERIOR**<br>1849 C Street, NW, MS 6556<br>Washington, DC 20240<br>                     Defendants. | **Case No. 1:17-cv-02708**<br><br>**COMPLAINT** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiff Indian Law Resource Center ("ILRC"), by and through undersigned counsel, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Office of Assistant Secretary–Indian Affairs ("AS-IA"), Pacific Regional Office of the United States Department of the Interior Bureau of Indian Affairs ("PRO"), and Office of the Solicitor, Department of the Interior ("OS" and together with AS-IA and PRO, "Defendants") to compel the disclosure of records that were requested of and improperly withheld or redacted by the Defendants.

2. On December 13, 2013, ILRC filed a FOIA request (the "Request") addressed to Defendants seeking records regarding the Timbisha Shoshone Tribe leadership dispute and Defendants' involvement in the dispute. Despite the fact that nearly four years have passed since Plaintiff submitted the Request, Defendants have failed to disclose timely, if at all, responsive records to Plaintiff.

3. ILRC respectfully requests that the Court order Defendants to conduct a reasonable search and disclose, without unreasonable redaction, any records that are responsive to ILRC's FOIA requests and to provide a Vaughn Index detailing the basis of all withheld documents.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue for this action is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Plaintiff ILRC is a 501(c)(3) non-profit educational and advocacy organization established and directed by American Indians whose principal goal is the preservation and well-being of Indian tribes and other Native nations. ILRC provides legal assistance without charge and carries out extensive research and public educational efforts concerning Indian nations and peoples. Non-party Timbisha Shoshone Tribe is a sovereign Indian tribe recognized by the Department of the Interior ("DOI") under the name the Death Valley Timbi-Sha Shoshone Tribe. The Tribe exercises governmental authority over the Timbisha Shoshone Reservation ("Reservation"), established by Congress in the Timbisha Shoshone Homeland Act of 2000.

ILRC advised the Timbisha Shoshone Tribe on governance of the reservation, management of the Tribe's affairs, its dealings with the United States Government, and continues to advise Timbisha Shoshone leaders.

7. Defendant AS-IA assists and supports the Secretary of the Interior in fulfilling the United States' responsibility as trustee to the federally recognized American Indian and Alaska Native tribes and villages and individual Indian trust beneficiaries, as well as in maintaining the federal-tribal government-to-government relationship. The AS-IA has possession, custody, and control of records to which the ILRC now seeks access.

8. Defendant PRO is responsible for all non-education related United States DOI Bureau of Indian Affairs ("BIA") programs, functions, and activities assigned to the Pacific region. It assists 104 Federally recognized tribes and works to improve interagency and intergovernmental cooperation and coordination within the region, including the Timbisha Shoshone Tribe. PRO has possession, custody, and control of records to which the ILRC now seeks access.

9. Defendant OS provides legal advice, counsel, and legal representation to the DOI. The Division of Indian Affairs, which is a division of OS, provides legal counsel and representation to the Secretary acting as federal trustee to American Indian tribes and their members. The OS has possession, custody, and control of records to which the ILRC now seeks access.

## STATEMENT OF FACTS

### The Purpose of FOIA

10. FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

11. Under FOIA, every document generated by an agency should be available to the public in one form or another, unless it falls within one of the Act's nine exemptions. The exemptions are construed narrowly in favor of disclosure.

12. An Agency responding to FOIA is obligated to perform a search reasonably calculated to uncover all documents relevant to the request, and to credibly demonstrate that any claimed exemption actually applies. Any withheld information should be accompanied by an explanation for the justification for withholding the information.

### The ILRC's FOIA Request

13. Plaintiff ILRC seeks documents and materials that will provide meaningful information regarding the Defendants' interaction with the Timbisha Shoshone Tribe, and the Defendants' specific activities as they relate to recognizing tribal governments, recognizing tribal elections, recognizing tribal enrollment and disenrollment, and fostering a strong and stable tribal government. Specifically, the records sought by the ILRC will establish the factual basis for the Defendants' interactions with and decisions regarding the Timbisha Shoshone Tribe leadership dispute and help illuminate then-acting Assistant Secretary–Indian Affairs, Echo Hawk's, 2011 decision to deny the validity of the Timbisha Shoshone Tribe's disenrollment of 74 persons who are not members of the Timbisha Shoshone Tribe, including George Gholson. The BIA has insisted that these non-members be permitted to vote and to hold office in the Timbisha

Shoshone Tribe, despite their association with commercial interests potentially antithetical to wellbeing of the Tribe.

14. On December 13, 2013, the ILRC filed a Freedom of Information Act request addressed to the Defendants, seeking disclosure of all documents, memoranda, emails, and records in existence between October 2007 and December 2013 regarding the following:

i. The November 13, 2007 Tribal Council election conducted by the Timbisha Shoshone Tribe (*i.e.*, conducted by the Timbisha Shoshone Tribal government of which Joe Kennedy was Tribal Chairman);

ii. The November 2007 Timbisha Shoshone Tribal Council election, styled "Election Mark II," conducted by Edward Beaman, Virginia Beck, and Cleveland Lyle Casey, purporting to be a legitimate Timbisha Shoshone tribal election;

iii. The September 20, 2008 Timbisha Shoshone Tribal Council election conducted by George Gholson, Wallace Eddy, and Margaret Cortez, purporting to be a legitimate Timbisha Shoshone tribal election;

iv. The Timbisha Shoshone Tribal Enrollment Committee's September 25, 2008 disenrollment of approximately 74 persons;

v. The alleged Timbisha Shoshone "General Council" meeting held in Las Vegas, Nevada in September 2008;

vi. CCA Superintendent Troy Burdick's assistance, and any BIA assistance, to Gholson, on or around October 20, 2008, in removing Timbisha Shoshone tribal records and property from tribal offices;

vii. Burdick's November 10, 2008 proposal to recognize the Timbisha Shoshone Tribe's Tribal Council elected in 2006;

viii. The November 11, 2008 Tribal Council election conducted by the Timbisha Shoshone Tribe (*i.e.*, conducted under Kennedy as Tribal Chairman for the Timbisha Shoshone);

ix. The November 10, 2009 Tribal Council election conducted by the Timbisha Shoshone Tribe (*i.e.*, conducted under Kennedy as Tribal Chairman for the Timbisha Shoshone);

x. The November 10, 2009 Tribal Council election conducted by Gholson, Wallace Eddy, and Margaret Cortez, purporting to be a legitimate Timbisha Shoshone tribal election;

xi. Burdick's February 24, 2010 decisions to terminate government-to-government relations with the Timbisha Shoshone Tribe;

xii. The November 9, 2010 Tribal Council election conducted by the Timbisha Shoshone Tribe (*i.e.*, conducted under Kennedy as Tribal Chairman for the Timbisha Shoshone);

xiii. The relationship between Gholson, Eddy, or Cortez, on the one hand, and Global Investment Enterprises, LLC, a gaming development company, and/or Grish Akopian, on the other hand;

xiv. Echo Hawk's March 1, 2011 decision affirming the Director of PRO's decision to reject the validity of actions taken by the General Council of the Timbisha Shoshone Tribe on January 20, 2008, and recognizing the government lead by Gholson for the purpose of holding a special election;

xv. Echo Hawk's July 29, 2011 decision to recognize the results of the April 29, 2011 special election, conducted by Gholson, purporting to be a legitimate Timbisha Shoshone tribal election;

xvi. The process of objections to or appeals from the April 29, 2011 special election, conducted by Gholson, purporting to be a legitimate Timbisha Shoshone tribal election;

xvii. Any considerations or discussions regarding the BIA's recognition or denial of recognition of the Timbisha Shoshone Tribal Council from 2007 through 2013;

xviii. The BIA's decision to conduct a Secretarial election on a proposed Constitution of the Timbisha Shoshone Tribe on November 4, 2013;

xix. The BIA's decision to cancel the Secretarial election on a proposed Constitution of the Timbisha Shoshone Tribe on November 4, 2013.

*See* attached **Exhibit A**, ILRC's December 13, 2013 FOIA Request.

15. The Request was relevant to understand the facts behind the United States government's — acting through the BIA — intervention with regard to the Timbisha Shoshone tribal leadership dispute. The records currently available do not explain the underlying facts that Defendants considered in reaching the ultimate decisions regarding the validity of various Timbisha Shoshone tribal elections conducted by the Timbisha Shoshone Tribe (*i.e.*, conducted under Kennedy as Tribal Chairman for the Timbisha Shoshone).

16. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the sectors of the government tasked to administer the U.S. Government's policies regarding American Indians; specifically, the DOI, the BIA, and the Defendants PRO, OS, and AS-IA. Indeed, disclosure of this information will contribute significantly to public understanding of the operations and activities conducted by the BIA in carrying out its overall mission to "enhance the quality of life, to promote economic opportunity, and to carry out the responsibility to protect and improve the trust assets of American Indians, Indian tribes, and Alaska Natives."

17. Among other things, the BIA is charged with promoting awareness of tribal government responsibilities and processes, and providing tribes with the resources they need to foster strong and stable tribal governments in exercising their rights as sovereign nations. The BIA does this through numerous avenues, including: recognition of tribal governments, reviewing tribal resolutions and proposed governing documents, administering special elections, and consulting on enrollment/disenrollment matters and appeals. Moreover, the BIA is also responsible for the use or distribution of funds awarded in satisfaction of a judgment of the Indian Claims Commission.

18. The requested information will provide meaningful information on the specific activities of the BIA and the DOI as they relate to recognizing tribal governments, recognizing tribal elections, recognizing tribal disenrollments, and fostering strong and stable tribal governments vis-à-vis the Defendants' interaction with the Timbisha Shoshone Tribe. Specifically, the records will provide information about the underlying facts that influenced the Defendants' interactions with and decisions regarding the Shoshone Timbisha Tribe and the Timbisha Shoshone people. The requested records may also confirm or clarify the Defendants'

prior stated positions.  Moreover, while the Defendants' formal decisions regarding the Timbisha Shoshone are publicly available, the underlying facts which informed the decisions are not.

19. If obtained, the information encompassed by this request will be communicated to a reasonably broad audience of Indian and Alaska native tribes, Indian organizations, scholars, professors, and others interested in the subject through the communications work of the ILRC, which maintains a detailed website and publishes annual reports, newsletters, press releases, papers, scholarly articles, and books regarding legal and policy issues facing the American Indian community.

20. Disclosure of the information sought is not in the commercial interest of the ILRC.  The documents were not requested for private, profit-making, or commercial purposes.  Rather, the requested information was sought to determine whether the Defendants appropriately considered all of the relevant available information in reaching the conclusions they did regarding the Timbisha Shoshone Tribe.

**The Defendants' Response**

21. On December 17, 2013, ILRC, through its undersigned counsel, received a *pro forma* email response to its FOIA request, stating that "[t]he Bureau of Indian Affairs[](BIA) and the Office of the Assistant Secretary[](AS-IA) will conduct a search of all components identified in your request that are with the BIA and AS-IA."  The email also stated that the FOIA "request is being referred to the Office of the Secretary of Interior FOIA Office and the [] Department of the Interior [] Office of the Solicitor."   The December 17, 2013 email is attached here as **Exhibit B.**

Defendant AS-IA

22.     On April 21, 2015, after failing to receive a response to its request from AS-IA, ILRC, by and through its undersigned counsel, sent a letter to AS-IA concerning the status of the request. The April 21, 2015 letter is attached here as **Exhibit C.**

23.     On April 29, 2015, the FOIA officer for AS-IA emailed ILRC, stating that "responsive documents we had in our possession for Indian Affairs Central Office were sent to the Office of the Solicitor (SOL) and the request was also referred to SOL since they also have responsive documents. . . ." The FOIA officer for AS-IA stated that ILRC would have to contact OS for the status of the request. The April 29, 2015 email is attached here as **Exhibit D**.

Defendant OS

24.     On April 18, 2014, over four months after ILRC submitted the Request, OS acknowledged receipt of the Request and estimated that producing documents responsive to the Request would cost approximately $4,600. The April 18, 2014 letter is attached here as **Exhibit E**. ILRC, through its undersigned counsel, requested OS waive the production fee.

25.     By letter on May 7, 2014, ILRC, through its undersigned counsel, reiterated its request for fee waiver that was included in ILRC's initial FOIA Request. The May 7, 2014, letter is attached here as **Exhibit F**.

26.     On April 21, 2015, after likewise failing to receive any response from OS, ILRC, by and through its undersigned counsel, sent a letter to AS-IA concerning the status of the request. The April 21, 2015 letter is attached here as **Exhibit G**.

27.     On April 28, 2015, counsel had a phone call with OS's FOIA Officer, Lance Purvis, to discuss the status of the Request. Counsel subsequently forwarded to Mr. Purvis previous correspondence relating to the matter. The April 28 – September 28, 2015 Email Chain between counsel and Lance Purvis is attached hereto as **Exhibit H**.

28. On June 3, 2015, counsel again contacted Mr. Purvis to follow-up on the status of the Request and asked Mr. Purvis to confirm whether OS would also be responding to the Request on behalf of AS-IA. *See* **Exhibit H**.

29. On June 4, 2015, OS emailed counsel to finally grant ILRC's fee waiver request from over a year prior and to schedule a call to discuss the request, which occurred on June 08, 2015. *See* **Exhibit H**.

30. As a follow-up to the call, on June 8, 2015, ILRC, through its undersigned counsel, attempted to verify that the response it received from OS included records from AS-IA. On June 09, 2015, OS responded, "I don't think the documents turned over by BIA cover the Assistant Sec, but I'll ask the question to be sure." *See* **Exhibit H**.

31. On June 11, 2015, OS produced a first installment of documents responsive to the Request, and added that it would supplement this initial production with later installments. The June 11, 2015 letter is attached here as **Exhibit I**. OS's first installment consisted of approximately 300 documents.

32. On August 24, 2015, ILRC, through its undersigned counsel, attempted to verify whether OS was correct in its belief that its response did not include AS-IA records, but received no response. Due to OS's failure to respond to the August 24, 2015 inquiry, on September 28, 2015, ILRC's undersigned counsel again attempted to contact OS related to ILRC's requests. On September 28, 2015, OS responded to ILRC's counsel stating that it was "still working diligently" on ILRC's FOIA request, however, OS provided no response regarding whether its response included records from AS-IA. *See* **Exhibit H**.

33. Nearly a year later, on March 18, 2016, OS released a second installment of records consisting of 713 files, of which 366 were redacted pursuant to 5 U.S.C. § 552(b)(5) ("FOIA Exemption 5") and/or 5 U.S.C. § 552(b)(6) and ("FOIA Exemption 6"). OS again indicated that more installments of records were to follow. The March 18, 2016 letter is attached here as **Exhibit J**.

34. On October 14, 2016, OS produced a third installment of records in response to the Request, consisting of 343 files, 253 of which are redacted, according to OS, pursuant to FOIA Exemption 5 and FOIA Exemption 6. The October 14, 2016 letter is attached here as **Exhibit K**.

35. Still having received no clarification regarding (a) the inclusion – or not – of documents from AS-IA, and (b) the voluminous, unexplained redactions in OS's productions, on April 25, 2017, ILRC, through its undersigned counsel, requested OS to provide its complete response, including a detailed explanation of the reasons for the numerous redactions in OS's second and third installments. The April 25, 2017 letter is attached here as **Exhibit** L.

36. On June 5, 2017, ILRC, through its undersigned counsel, after receiving no response from OS, reiterated its April 25, 2017 request to OS via fax and additionally inquired about the status of the additional AS-IA documents that OS has yet to produce. The June 5, 2017 Letter and facsimile confirmation are attached here as **Exhibit M**.

37. On June 6, 2017, Lance Purvis, the OS FOIA Officer, called undersigned counsel's offices. Counsel reiterated the IRLC's requests, namely, asking OS to confirm whether it had responded on behalf of the AS-IA, and the justification for withholding or redacting documents included in the OS's second and third installments of records. Mr. Purvis agreed to look into both issues and respond to counsel. Mr. Purvis also stated that he did not

receive the April 25, 2017 letter. After the call, counsel emailed Mr. Purvis to memorialize the call, and attached the April 25, 2017 letter. Counsel's June 6, 2017 email with attachments is enclosed as **Exhibit N**.

38. On June 9, 2017, counsel faxed a letter to Mr. Purvis enclosing a list of persons that were included as recipients of redacted correspondence provided by the OS in response to the FOIA request. Counsel requested Mr. Purvis review and identify the listed individuals by role and department, and provide an explanation regarding why OS deemed communications with that individual privileged. Counsel's fax also included a copy of counsel's June 6, 2017 email with attachments. The June 9, 2017 letter and facsimile confirmation are attached here as **Exhibit O**.

39. On July 7, 2017, counsel faxed a follow up letter to Mr. Purvis, re-enclosing the list of individuals originally appended to counsel's June 9, 2017 letter. The July 7, 2017 letter and facsimile confirmation are attached here as **Exhibit P**.

40. On July 13, 2017, counsel again emailed Mr. Purvis re-attaching the recent correspondence regarding the FOIA request. Counsel's July 13, 2017 email is attached here as **Exhibit Q**.

41. On July 18, 2017, Counsel spoke to Mr. Purvis over the phone, and sent another follow up email re-attaching the recent correspondence, and requesting an estimate as to the time it would take for OS to provide the requested information. Counsel's July 18, 2017 email is attached here as **Exhibit R**.

42. On July 19, 2017, Mr. Purvis emailed counsel a partial list of the individuals identified by counsel, but updated to include the individuals' job titles and work affiliations. Mr.

Purvis was unable to provide information individuals who he claimed were "not within [OS]." Mr. Purvis's July 19, 2017 email is attached here as **Exhibit S**.

43. On July 27, 2017, Mr. Purvis confirmed over email that his July 19, 2017 email to counsel was a "final response." Mr. Purvis's July 27, 2017 email is attached here as **Exhibit T**.

44. On October 16, 2017, following OS's final response, ILRC, by and through undersigned counsel, appealed OS's inadequate and incomplete response to the above-referenced FOIA request. ILRC's administrative appeal is attached here as **Exhibit U**.

45. OS has failed to respond to ILRC's administrative appeal within the 20 work days required under 5 U.S.C. § 552(a)(6)(A)(ii).

46. To date, OS has not confirmed whether it has responded on behalf of AS-IA, despite that AS-IA's final decision was the catalyst of ILRC's FOIA requests, and despite that AS-IA is the governing arm of the Bureau of Indian Affairs, and would reasonably be assumed to possess relevant information that is responsive to ILRC's FOIA request. Nor has OS identified the document custodians and repositories searched, the search terms used, if any, nor the applicable time period of documents searched. Finally, OS has not provided the basis for its assertion of FOIA Exception 5, leaving Plaintiffs to make guesses as to why a particular document is privileged based on the very scant identifying information provided by OS.

<u>Defendant PRO</u>

47. On August 18, 2014, in response to an inquiry from ILRC's undersigned counsel, PRO confirmed in an email to counsel that PRO had not yet responded to the Request. The August 18, 2014 email is attached here as **Exhibit V**.

48. Over 15 months after ILRC submitted the Request, on March 19, 2015, PRO sent a letter to ILRC stating that it had located and sent responsive documents to OS for review and approval prior to release to ILRC. The March 19, 2015 email is attached here as **Exhibit W.**

49. On May 1, 2015, PRO produced materials to ILRC in response to the Request. PRO's cover letter accompanying the materials stated that it had located 2,325 pages of responsive records, but was withholding 1,568 pages — 137 pursuant to FOIA Exemption 5 and 1,431 pursuant to FOIA Exemption 6. In total, PRO produced 757 pages of documents, "some" of which were redacted pursuant to FOIA Exemption 6. The May 1, 2015 letter is attached here as **Exhibit X**.

50. On June 10, 2015, the ILRC, through its undersigned counsel, filed a FOIA Appeal before the DOI FOIA Appeals Officer regarding PRO's decision to withhold the 1,568 pages. The June 10, 2015 FOIA appeal is attached here as **Exhibit Y.**

51. On March 15, 2016, the DOI FOIA Appeals Officer granted in part and denied in part ILRC's appeal. The March 15, 2016 decision is attached here as **Exhibit Z**. In connection with the decision, on April 12, 2016, PRO produced an additional 635 pages, the majority of which contained redactions.

52. To date, PRO has not produced any additional documents in response to the Request. To date, PRO has never once identified the document custodians and repositories searched, the search terms used, if any, nor the applicable time period of documents searched. To date, PRO has never provided the basis for its assertion of FOIA Exception 5.

**Defendants Violated FOIA**

53.     ILRC worked diligently with the Defendants to obtain the information it requested nearly four years ago.  Defendants, however, have acted neither promptly nor in a spirit of cooperation with ILRC.  Instead, Defendants have created confusion and delay.

54.     Defendants produced unsearchable files in .tiff format.  This means that the ILRC was provided with literally thousands of what are essentially photographs of documents, with no identifying information in the file names (each of which was simply a number).  Defendants also produced large, undivided .pdf files consisting of multiple documents.  This makes it extremely challenging to identify and sort through the documents.  Indeed, to do so would require printing and manually sorting through thousands of pages of documents.

55.     In addition to unsearchable documents, Defendants frequently failed to identify which division or department originated the documents they were producing, making it impossible for the ILRC to evaluate the completeness of the Defendant's response.  For example, correspondence from OS indicates that OS's responses comprise only documents originally within OS's possession.  *See* Exhibit E ("[T]he Office of the Solicitor searched *its records* and found documents responsive to [ILRC's] request" (emphasis added)).  Consequently, although it appears that OS's response includes only documents originally within its possession, it remains unclear if OS's responses were made on behalf of any other departments, divisions, offices, and entities within DOI that may possess or control responsive documents, including Defendant AS-IA.  This uncertainty is compounded given that DOI's own FOIA guidance states DOI's "FOIA operations are *decentralized* between 13 bureaus and offices." *Freedom of Information Act Program*, DEP'T OF THE INTERIOR, https://www.doi.gov/foia (last visited May 16, 2017) (emphasis added).

56.     Defendants also have not identified the document custodians and repositories searched, the search terms used, if any, nor the applicable time period of documents searched, which adds to the confusion over the sources from which the documents originated.

57.     In addition, Defendants have caused excessive delays.  For example, OS responded to ILRC's request four months after receipt, submitted piecemeal responses over the course of three years, and presumably has yet to produce documents sent to its office from other entities within DOI.

58.     Defendants repeatedly relied on Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" to withhold or redact documents.  Defendants assert, variously, that the documents are protected by the deliberative process privilege, the attorney work product privilege, and/or the attorney-client privilege.  However, Defendants have not provided sufficient explanations as to why any of these privileges would apply to the specified documents, and, instead baldly assert that the documents are privileged.  Likewise, in some instances, Defendant's responses provide no explanation whatsoever.  Instead, Defendants provided case law that simply identified protected categories of information without any explanation regarding the specific materials withheld.

59.     In short, Defendants have patently violated FOIA.

60.     At this point, ILRC has exhausted its applicable administrative remedies and now seeks court-ordered relief pursuant to 5 U.S.C. § 552(a)(4)(B).

## FIRST CAUSE OF ACTION, FAILURE TO ADEQUATELY SEARCH FOR RESPONSIVE RECORDS

61. All preceding paragraphs above are hereby incorporated by reference as if fully stated herein.

62. Defendants have unlawfully failed to make reasonable efforts to perform an adequate search for records that are responsive to the Request.

63. Defendants have not identified the document custodians and repositories searched, the search terms used, if any, nor the applicable time period of documents searched, thereby impairing the integrity of the limited search results that were provided.

## SECOND CAUSE OF ACTION, FAILURE TO DISCLOSE RESPONSIVE RECORDS

64. All paragraphs above are hereby incorporated by reference as if fully stated herein.

65. The Defendants have unlawfully withheld or redacted responsive records regarding the Request.

66. Defendants repeatedly and improperly relied on FOIA exemptions without explanation, justification, or basis in fact.

## RELIEF

WHEREFORE, Plaintiff prays that the Court:

A. Enjoin Defendants from withholding agency records and order Defendants to produce the requested records in their entirety and make copies available to Plaintiff, pursuant to 5. U.S.C. § 552(a)(4)(B);

B. Award costs and attorney's fees, pursuant to 5 U.S.C. § 552(a)(4)(E);

C. Issue a written finding that the circumstances surrounding the withholding of records by each Defendant was an arbitrary and capricious act having no basis in law, pursuant to 5 U.S.C. § 552 (a)(4)(F); and

D. Grant Plaintiff such other and further relief as the Court deems just and proper.

Plaintiff reserves the right to amend this Complaint to plead new parties, claims and/or allegations.

DATED: December 19, 2017

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON, LLP

By: _/s/ *Heather L. Petrovich*

Heather L. Petrovich
DC Bar Number: 1033776
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
T: (202) 747-2185
F: (202) 747-3837
Email: hpetrovich@sheppardmullin.com

*Counsel for Indian Law Resource Center*